UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ROBERT BABUR BASAT, #472479,

        Petitioner,

                                       CASE NO. 2:08-CV-13743
v.                                         HONORABLE DENISE PAGE HOOD

THOMAS BELL,

        Respondent.

_____/

**OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF
HABEAS CORPUS AND DENYING A CERTIFICATE OF APPEALABILITY**

**I.**    **Introduction**

      This is a habeas case brought pursuant to 28 U.S.C. § 2254. Michigan prisoner Robert

Babur Basat ("Petitioner") was convicted of three counts of first-degree criminal sexual conduct,

Mich. Comp. Laws § 750.520b(1)(a) (person under 13), and two counts of possession of child

sexually abusive material, Mich. Comp. Laws § 750.145c(4), in Case No. 03-188269, and two

counts of first-degree criminal sexual conduct, Mich. Comp. Laws § 750.520b(1)(a), and one

count of second-degree criminal sexual conduct, Mich. Comp. Laws § 750.520c(1)(b), in Case

No. 03-188270, following one jury trial in the Oakland County Circuit Court in 2003. The trial

court sentenced Petitioner to concurrent terms of 40 to 80 years imprisonment on the convictions

in Case No. 03-18869 and as a fourth habitual offender, Mich. Comp. Laws § 769.12, to

concurrent terms of 50 to 80 years imprisonment and 19 to 60 years imprisonment on the

convictions in Case No. 03-18870.[1]

_____

[1]The trial court did not impose a sentence for the child pornography convictions.

In his pleadings, Petitioner raises claims concerning the state trial court's personal jurisdiction and the effectiveness of trial and appellate counsel. Respondent, through the Michigan Attorney General's office, has filed an answer to the petition contending that it should be denied. For the reasons set forth, the Court denies the petition for a writ of habeas corpus and denies a certificate of appealability.

## II.     Facts and Procedural History

Petitioner's convictions in Case No. 03-188269 arise from his sexual assaults of J.B. and H.B., a brother and sister, at his home in Oakland County, Michigan on separate occasions in 1992 and 1995. Petitioner's convictions in Case No. 03-188270 arise from his sexual assault of R.H., a boy unrelated to the other victims, at Petitioner's home in Oakland County, Michigan in 1999. The Michigan Court of Appeals set forth the underlying facts of the case, which are presumed correct on habeas review, *see Monroe v. Smith*, 197 F. Supp. 2d 753, 758 (E.D. Mich. 2001), *aff'd.* 41 F. App'x 730 (6th Cir. 2002), as follows:

> For many years, defendant played overnight host to children, primarily boys, of families he befriended through business dealings or otherwise. Defendant purchased gifts and items for the children, and allowed the boys who visited to do whatever they wanted, including smoking, drinking, and watching "R" rated movies or pornography. Defendant also allowed several boys to move into his home, and he introduced some of these boys as his own "sons" when identifying them to other people.
>
> J.B.'s mother met defendant in 1992 through her nephew J.W., who lived with defendant. The mother believed that defendant was a nice person and, by the summer of 1992, she allowed J.B., who was twelve years old, to spend many nights at defendant's home. J.B.'s younger sister, H.B., also occasionally spent the night in defendant's home. J.B. testified that the defendant touched him and committed sexual acts on him numerous times. H.B. testified that she met defendant in 1992 when she was eight years old. During the Christmas season in 1994 or 1995, she stayed at defendant's house and slept in his bed. While she was in defendant's room, he convinced her that he was a doctor, had spoken to her mother, and needed to examine her vagina. After looking at her vagina, he informed her that it was dry. He rubbed lotion on it and put his fingers inside of it. On one other occasion, when H.B. was approximately nine years old and was in

Canada with defendant, she testified that the defendant penetrated her vagina with his finger.

In November 2002, J.B. became a father and, at that time, he told his mother what had happened with defendant. His mother questioned H .B. about defendant, and H.B. revealed that defendant had also assaulted her. The police were contacted, defendant was arrested at his apartment on the same day that J.B. made his complaint to the police. Defendant denied touching either J.B. or H.B., but admitted to having children sleep in his bed because of his heart condition. Three computers were seized from defendant's apartment, along with a voice-changing device, a magic book, and 157 videotapes. Some of the videotapes were foreign films that depicted child nudity and erotica. More than one hundred individual images of children engaged in sexually abusive activity were found on the computers.

R.H. was also interviewed by the police in connection with defendant. He testified that he was seven years old when he met defendant, who had handled a mortgage for R.H.'s family. Defendant maintained a relationship with R.H.'s family and eventually became a father figure to R.H. Defendant told R.H.'s mother, that a demon was after R.H. R.H.'s mother was initially skeptical, however testimony elicited at trial indicates that defendant eventually convinced her that her son was cursed. Defendant also persuaded R.H.'s mother that he could protect R.H. by using his own blood to mark the child's abdomen. He performed this ritual on R.H. numerous times. R.H. testified that defendant also put his mouth on R.H.'s penis and grabbed R.H.'s testicles on many occasions. Defendant told R.H. that the oral pleasure would keep him safe from demons.

At trial, defendant denied sexually assaulting any of the three victims or the other witnesses. He claimed that J.B. and H.B. had conspired against him to bring the charges after he kicked their cousin, J.W., out of his home. Defendant also asserted that he had pornography on his computers because he was working to provide authorities, including the Federal Bureau of Investigation (FBI), with information about internet pornography.

*People v. Basat*, No. 252518, *1-2, 2005 WL 1106362 (May 10, 2005) (unpublished per curiam).

Following his convictions and sentencing, Petitioner filed an appeal as of right with the Michigan Court of Appeals raising claims concerning the admission of other acts evidence, the admission of non-pornographic evidence taken from his computer, the trial court's failure to strike the prosecution's questions about a witness's religion, the trial court's failure to conduct a suppression hearing as to the validity of the search warrant, and the effectiveness of trial counsel

as to a conflict of interest, the failure to impeach witnesses with prior inconsistent statements, the failure to contact witnesses before trial, the failure to object to other acts evidence, the failure to impeach one of the victim's with passport evidence, and the failure to obtain the victims' medical records. The court found the claims to be procedurally defaulted and/or without merit and affirmed Petitioner's convictions. *Id.* Petitioner filed an application for leave to appeal with the Michigan Supreme Court raising the same claims, as well as new claims concerning his inability to file a pro per supplemental brief, additional claims of ineffective assistance of trial counsel, the prosecution's failure to disclose evidence, the admission of hearsay evidence, prosecutorial misconduct, and the effectiveness of appellate counsel. The court denied leave to appeal in a standard order. *See People v. Basat*, 474 Mich. 1123, 712 N.W.2d 471 (2006).

Petitioner subsequently filed a motion for relief from judgment in the state trial court raising claims concerning the effectiveness of trial and appellate counsel, the prosecution's failure to disclose evidence, and the admission of hearsay evidence. The trial court denied the motion pursuant to Michigan Court Rule 6.508(D)(3), finding that Petitioner had failed to establish good cause or actual prejudice because he had not shown that either trial or appellate counsel were ineffective as he had failed to establish that he was deprived of a fair trial and that the trial outcome would have been different. *See People v. Basat*, Nos. 03-188269-FC, 03-188270-FC (Oakland Co. Cir. Ct. Jan. 17, 2007) (unpublished). Petitioner filed an application for leave to appeal with the Michigan Court of Appeals raising claims concerning the effectiveness of trial and appellate counsel, which was denied "for failure to meet the burden of establishing entitled to relief under MCR 6.508(D)." *See People v. Basat*, No. 277082 (Mich. Ct. App. Oct. 23, 2007) (unpublished). Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was similarly denied. *See People v. Basat*, 480 Mich. 1186,

747 N.W.2d 263 (2008).

Petitioner also filed a state habeas petition with the Lenewee County Circuit Court asserting that the state trial court lacked personal jurisdiction in his criminal proceedings, which was denied. *See Basat v. Department of Corrections*, No. 07-002737-AH (Lenewee Co. Cir. Ct. Nov. 14, 2007) (unpublished). Petitioner then filed an original state habeas petition with the Michigan Court of Appeals, which was denied for lack of jurisdiction. *See Basat v. Department of Corrections*, No. 282091 (Mich. Ct. App. Jan. 10, 2008) (unpublished). His request for reconsideration was also denied. Petitioner also filed an application for leave to appeal with the Michigan Supreme Court, which was denied. *See Basat v. Department of Corrections*, 481 Mich. 917, 750 N.W.2d 218 (2008).

Petitioner thereafter instituted this federal habeas action, raising the following claims:

I.      The state trial court lacked personal jurisdiction over him for his criminal proceedings.

II.     Appellate counsel was ineffective on direct appeal for failing to raise claims that trial counsel was ineffective for:

        A.      Failing to object or move for mistrial based upon the prosecutor's questioning of witnesses about Petitioner's religious beliefs.

        B.      Failing to object to the prosecutor's remark that J.S. would be Petitioner's next victim and expressing a personal belief in Petitioner's guilt.

        C.      Failing to object to the prosecutor's assertion that Petitioner had sexually assaulted his stepson Jemra and J.W. where those parties did not testify.

        D.      Failing to object to the wrong limiting instruction on the other acts evidence.

        E.      Failing to present a complete defense by exposing the victims' bias and financial reasons to fabricate their stories.

        F.      Failing to challenge the legality of Petitioner's arrest at his

home without a warrant.

III.    Appellate counsel was ineffective for failing to file a timely motion for reconsideration in the Michigan Court of Appeals so that the court would accept and consider Petitioner's pro per brief on appeal.

Respondent has filed an answer to the petition contending that habeas relief should be denied because the claims lack merit and/or are barred by procedural default. Petitioner has filed a reply to that answer.

## III.    Standard of Review

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified 28 U.S.C. § 2241 *et seq.*, govern this case because Petitioner filed his habeas petition after the AEDPA's effective date. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see*

*also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, _ U.S. _, 130 S. Ct. 1855, 1862 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7; *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams*, 529 U.S. at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. While the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

Additionally, a state court's factual determinations are entitled to a presumption of correctness on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

Lastly, when a state court fails to consider an issue or does not specifically address whether the alleged error constitutes a denial of a petitioner's federal constitutional rights, the deference due under 28 U.S.C. § 2254(d) does not apply, and habeas review of such a claim is *de novo*. *See Higgins v. Renico*, 470 F.3d 624, 630 (6th Cir. 2006) (quoting *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003), and citing *Wiggins v. Smith*, 539 U.S. 510, 534 (2003)).

## IV.    Discussion

### A.    Procedural Default

As an initial matter, Respondent contends that several of Petitioner's habeas claims are barred by procedural default. "Federal Courts [on habeas review] are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. Because the Court finds that Petitioner's claims lack merit, it need not address the procedural default issue.

### B.    Jurisdictional Claim

Petitioner first asserts that he is entitled to habeas relief because the state trial court lacked personal jurisdiction over him for his criminal proceedings. However, the determination of whether a particular state court is vested with jurisdiction under state law and is the proper

venue to hear a criminal case is a "function of the state courts, not the federal judiciary." *Wills v. Egeler*, 532 F.2d 1058, 1059 (6th Cir. 1976); *accord Write v. Angelone*, 151 F.3d 151, 157-58 (4th Cir. 1998); *Rhode v. Olk-Long*, 84 F.3d 284, 287 (8th Cir. 1996). It is well-settled that a perceived violation of state law may not provide a basis for federal habeas relief. *See, e.g., Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). The Court may grant a writ of habeas corpus only on the ground that the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Robinson v. Stegall*, 355 F.3d 916, 917 (6th Cir. 2004). A state court's interpretation of state jurisdictional issues conclusively establishes jurisdiction for purposes of federal habeas review. *See Strunk v. Martin*, 27 F. App'x 473, 475 (6th Cir. 2001). Petitioner has failed to state a claim upon which relief may be granted in his pleadings. *See Hill v. Sherry*, No. 07-13978, 2008 WL 1902106, *3 (E.D. Mich. April 30, 2008) (Roberts, J.) (summarily dismissing jurisdictional challenge); *Smith v. Burt*, No. 08-CV-14239, 2008 WL 4791348, *2 (E.D. Mich. Oct. 24, 2008) (Cohn, J.); *Hamby-Bey v. Bergh*, No. 08-CV-13284, *2, 2008 WL 3286227 (E.D. Mich. Aug. 7, 2008) (Battani, J.); *Groke v. Trombley*, 2003 WL 1708109, *5 (E.D. Mich. April 1, 2003) (Lawson, J.). Habeas relief is not warranted on this claim.

## C.      Ineffective Assistance of Appellate Counsel Claims

Petitioner also asserts that he is entitled to habeas relief because appellate counsel was ineffective for failing to raise several claims of ineffective assistance of trial counsel on direct appeal and for failing to properly assist him in filing his pro per pleadings on appeal. The right to the effective assistance of counsel includes the right to the effective assistance of appellate counsel. *See Evitts v. Lucey*, 469 U.S. 387, 396 (1985). To prevail on a claim of ineffective assistance of appellate counsel, the petitioner must demonstrate that appellate counsel's

performance was deficient and that the deficient performance prejudiced the appeal. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

Citing the *Strickland* standard, the state trial court denied relief on these claims in denying Petitioner's motion for relief from judgment by finding that he had failed to establish cause and prejudice under Michigan Court Rule 6.508(D), and the Michigan appellate courts denied leave to appeal. Given the procedural posture of this case, there may be some question as to whether the deference due under 28 U.S.C. § 2254(d) applies to these claims or whether habeas review of such claims is *de novo*. The Court need not resolve this issue. Under either standard, and for the reasons that follow, the Court finds that Petitioner's claims lack merit and he is not entitled to federal habeas relief.

Petitioner first asserts that appellate counsel was ineffective for failing to raise several claims of ineffective assistance of trial counsel on direct appeal of his convictions. With respect to such claims, the United States Court of Appeals for the Sixth Circuit has held that the determination of whether appellate counsel performed deficiently should be assessed in light of the following eleven factors:

> 1. Were the omitted issues "significant and obvious"?
> 2. Was there arguably contrary authority on the omitted issues?
> 3. Were the omitted issues clearly stronger than those presented?
> 4. Were the omitted issues objected to at trial?
> 5. Were the trial court's rulings subject to deference on appeal?
> 6. Did appellate counsel testify in a collateral proceeding as to his appeal strategy
> and, if so, were the justifications reasonable?
> 7. What was the appellate counsel's level of experience and expertise?
> 8. Did the petitioner and appellate counsel meet and go over possible issues?
> 9. Is there evidence that counsel reviewed all the facts?
> 10. Were the omitted issues dealt with in other assignments of error?
> 11. Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

*Mapes v. Coyle*, 171 F.3d 408, 427-28 (6th Cir. 1999); *see also Franklin v. Anderson*, 434 F.3d

412, 429 (6th Cir. 2006).

The Supreme Court has made clear that a criminal defendant has no constitutional right to demand that appellate counsel raise every possible colorable issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones*, 463 U.S. at 751-52). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002). Appellate counsel need not raise every non-frivolous issue, but must exercise reasonable professional judgment. *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003) (citing *Jones*, 463 U.S. at 751-53). A petitioner is prejudiced by appellate counsel's deficient performance if a reasonable probability exists that, but for counsel's deficient performance, he would have prevailed on appeal. *See Riley v. Jones*, 476 F. Supp. 2d 696, 709 (E.D. Mich. 2007); *see also Meade v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003) (appellate counsel may prejudice a defendant by omitting a "dead-bang winner," an issue obvious from the trial record which would have resulted in reversal on appeal).

Petitioner has failed to show that by omitting the ineffective assistance of trial counsel claims presented in his motion for relief from judgment appellate counsel's performance fell outside the wide range of professionally competent assistance. Appellate counsel presented viable issues on direct appeal, including claims concerning the admission of other acts

evidence, the admission of non-pornographic evidence taken from Petitioner's computer, the trial court's failure to strike the prosecution's questions about a witness's religion, the trial court's failure to conduct a suppression hearing as to the validity of the search warrant, and the effectiveness of trial counsel as to a conflict of interest, the failure to impeach witnesses with prior inconsistent statements, the failure to contact witnesses before trial, the failure to object to other acts evidence, the failure to impeach one of the victim's with passport evidence, and the failure to obtain the victims' medical records. As further explained *infra*, Petitioner has not shown that appellate counsel's strategy in presenting such claims and not raising the other claims in the motion for relief from judgment was deficient or unreasonable, nor has he shown that he was prejudiced by counsel's performance.

Petitioner also asserts that appellate counsel was ineffective for failing to timely file a motion for reconsideration in the Michigan Court of Appeals so that the court would accept and consider Petitioner's untimely pro per brief on appeal. This claim lacks merit. Petitioner cannot establish that appellate counsel was ineffective for failing to properly assist him in filing his pro per supplemental pleadings. Even if state law requires such assistance, the Constitution does not. A criminal defendant has no federal constitutional right to self-representation on direct appeal from a criminal conviction, *Martinez v. Court of Appeal of California*, 528 U.S. 152, 163 (2000), and there is no constitutional entitlement to submit a pro se appellate brief on direct appeal from a criminal conviction in addition to a brief submitted by appellate counsel. *See McMeans v. Brigano*, 228 F.3d 674, 684 (6th Cir. 2000). As another judge in this District has explained:

> There is no constitutional right to "hybrid" representation, where a defendant is both represented by counsel and acts as his own attorney. *See Wilson v. Hurt*, 29 Fed. Appx. 324, 327 (6th Cir. 2002); *United States v. Olano*, 62 F.3d 1180, 1193 (9th Cir. 1995). For this reason, "[a]bsent invocation of his right to represent

himself without the assistance of counsel," a petitioner is "not entitled to have his pro se motions entertained by the court alongside those of counsel." *Delgado v. Duncan*, No. 02-CV-4929, 2003 WL 23185682, *5 (E.D. N.Y. Nov.4, 2003); *see also Abdullah v. United States*, 240 F.3d 683, 686 (8th Cir. 2001); *United States v. Bergman*, 813 F.2d 1027, 1030 (9th Cir. 1987); *United States v. Gallardo*, 915 F. Supp. 216, 217 (D. Nev. 1995), *aff'd*, 92 F.3d 1194 (9th Cir. 1996); *Hall v. Dorsey*, 534 F. Supp. 507, 509 (E.D. Pa.1982). The same rule holds true for pro se appellate filings. *See Myers v. Johnson*, 76 F.3d 1330, 1335 (5th Cir. 1995) (a criminal defendant has no constitutional right to hybrid representation on appeal, and when defendant accepts assistance of counsel, but later objects to his attorney's appeal strategy or preparation of brief, defendant cannot then expect to be allowed to file supplemental pro se briefs on direct appeal).

*Anderson v. Berghuis*, No. 08-CV-10515-DT, 2009 WL 3672118, *22 (E.D. Mich. Oct. 30, 2009) (Rosen, J. accepting Magistrate Judge's report and denying relief on similar claim). Petitioner cannot establish a constitutional violation based upon appellate counsel's failure to file a timely motion for reconsideration regarding the rejection of his pro per supplemental brief on appeal.

Even assuming that Petitioner had a right to hybrid representation and that appellate counsel erred, Petitioner has failed to establish that he was prejudiced by counsel's conduct. First, he has not shown that had appellate counsel timely filed a motion for reconsideration, the Michigan Court of Appeals would have granted reconsideration and accepted his late supplemental brief. Standard 4 of Administrative Order 2004-6 provides in relevant part that "[t]he 84-day deadline may be extended only by the Court of Appeals on counsel's motion, upon a showing of good cause for the failure to file defendant's pleading within the 84-day deadline." Whether Petitioner would have met this good cause requirement remains unseen. Second, even if the Court of Appeals granted reconsideration and accepted his supplement brief, Petitioner has not shown that his supplemental claims have merit such that the result of his appeal would have been different. *See* discussion *infra*. As the United States Court of Appeals

for the Sixth Circuit has explained, the Court's determination that the unraised issues lack legal merit means the "inquiry is at an end; by definition, appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit." *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001). Petitioner was able to present his supplemental claims to the state courts in his motion for relief from judgment. The trial court found that Petitioner had failed to establish prejudice, *i.e.*, that he was "deprived of a fair trial and that the trial outcome would have been different," and the appellate courts denied leave to appeal. Given such circumstances, Petitioner cannot establish that appellate counsel was ineffective under the *Strickland* standard. Habeas relief is not warranted on this claim.

### D. Ineffective Assistance of Trial Counsel Claims

Petitioner asserts that trial counsel was ineffective in several ways. To establish that trial counsel was ineffective, a habeas petitioner must meet the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Johnson v. Bell*, 525 F.3d 466, 486-87 (6th Cir. 2008). A petitioner must establish that his attorney's performance was deficient and that the deficient performance prejudiced the defense. *See Strickland*, 466 U.S. at 687. An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. A petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that '[t]he proper measure of attorney performance means simply reasonableness under prevailing professional norms.'" *Wiggins*, 539 U.S. at 521 (quoting *Strickland*, 466 U.S. at 688).

14

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. Unless the petitioner demonstrates both deficient performance and prejudice, "it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable." *Id*. at 687.

Petitioner first asserts that trial counsel was ineffective for failing to object or move for mistrial based upon the prosecutor's questioning of witnesses about Petitioner's religious beliefs and his study/books about Satanism and witchcraft. Petitioner, however, has not established that counsel erred. Under Michigan law, a prosecutor may not generally inquire into a witness's religious beliefs. *See* Mich. Comp. Laws § 600.1436; *People v. Bouchee*, 400 Mich. 253, 262, 253 N.W.2d 626 (1977); *see also* Mich. R. Evid. 610 ("Evidence of the beliefs or opinions of a witness on matters of religion is not admissible for the purpose of showing that by reason of their nature the witness's credibility is impaired or enhanced."). Similarly, it can be improper under federal law for a prosecutor to inquire into a witness's or criminal defendant's religious or spiritual beliefs. *See, e.g., United States v. Cartagena-Carrasquillo*, 70 F.3d 706, 713 (1st Cir. 1995). However, not all questions about religion or personal beliefs are improper under state or federal law. Such an inquiry is appropriate when relevant and probative of an issue in a criminal prosecution. *See, e.g., People v. Calloway*, 180 Mich. App. 295, 298, 446 N.W.2d 870 (1989); *United States v. Beasley*, 72 F.3d 1518, 1527 (11th Cir. 1996).

In this case, victims of Petitioner's abuse testified that he referenced Satanism,

witchcraft, and black magic, that he engaged in ritualistic behavior with the boys, and that he told the boys that he needed their semen to survive. Trial Tr., Vol. II, pp. 13, 85, 87. The prosecution's inquiry was relevant for establishing Petitioner's modus operandi and his conduct with the boys, and was probative of the events in question. The prosecution did not argue that Petitioner or any other witness should or should not be believed based upon their religious or spiritual beliefs. Petitioner has failed to establish that trial counsel erred in failing to object to such matters or that he was prejudiced by counsel's conduct. Defense counsel cannot be deemed ineffective for failing to make a futile motion or objection. *McQueen*, 99 F.3d at 1316.

Petitioner next asserts that trial counsel was ineffective for failing to object to the prosecutor's remark that J.S. would have been Petitioner's next victim and the prosecutor's expression of a personal belief in Petitioner's guilt. At trial, the prosecutor stated:

> And all of the parents trusted him. Defense counsel put Sally Scholtz on the stand. I would submit to you that she's a prosecution witness. She's a prosecution witness because she was all of them once upon a time. She thinks he's a great guy and so did all of them.
>
> And the only thing more bone chilling than that is that she let her grandson who was twelve years old at the time stay at his house. I don't know what you were thinking, I know what I was thinking, thank God, right? He was next. And she doesn't know how lucky she is. She was a prosecution witness. She just doesn't know it.

Trial Tr., Vol. IV, pp. 144-45.

When viewed in context, the record indicates that the prosecutor referenced Joshua Scholtz in order to respond to defense witness Sally Scholtz's testimony that she trusted Petitioner alone with her grandson. The prosecutor was not telling the jury that they had to save Joshua Scholtz from Petitioner, and therefore convict Petitioner. Rather, the prosecutor was explaining why Mrs. Scholtz's testimony differed from that of the victims' parents. Such an argument was proper under the circumstances. As noted, defense counsel cannot be deemed

16

ineffective for failing to make a futile motion or objection. *See McQueen*, 99 F.3d at 1316.

Moreover, the prosecutor did not express a personal belief in Petitioner's guilt. Rather, the prosecutor merely argued from the evidence, and reasonable inferences therefrom, that Petitioner's guilt had been established beyond a reasonable doubt. Such argument was appropriate. *See Portuondo v. Agard*, 529 U.S. 61, 69 (2000) (prosecutor may argue from the facts that a witness, including a testifying defendant, is or is not worthy of belief); *Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000) (prosecutor may argue reasonable inferences from the evidence); *see also Bates v. Bell*, 402 F.3d 635, 646 (6th Cir. 2005) (prosecutor may highlight inconsistencies or inadequacies in the defense). Petitioner has failed to show that trial counsel erred and/or that he was prejudiced by counsel's conduct.

Petitioner next asserts that trial counsel was ineffective for failing to object to the prosecutor's claim that Petitioner had sexually assaulted his stepson Jemra and J.W., who did not testify at trial. When Petitioner took the stand, the following colloquy occurred as to Jemra:

> Q: Okay. Where' s Jemra?
> A: Jemra's in Turkey.
> Q: With his sister, right?
> A: With his mother and sister.
> Q: Okay. How come he's not here?
> A: You really want me to answer that? He was threatened and he left.
> Q: Oh, really by who?
> A: I don't know. He has a Visa problem and his Visa was lapsed.
> Q: Okay. Wouldn't you like him to help you?
> A: No, I mean that's what he told me. I only speak to him on the phone.
> Q: What did you do to him?
> A: I didn't do anything.

Trial Tr., Vol. IV, pp. 85-86.

The prosecutor's questions were proper. When Petitioner testified that he had not abused children, the prosecutor was allowed to inquire into his relationships with children. The prosecutor did not assert that Petitioner had abused Jemra, but merely inquired into his

whereabouts, his absence from trial, and whether Petitioner had done anything to him. Petitioner responded that Jemra was in Turkey due to visa problems and that he did not do anything to him. Petitioner has not shown error or prejudice. He has failed to establish that trial counsel was ineffective in this regard.

As to J.W., the prosecutor elicited testimony and commented on J.W.'s relationship and living arrangements with Petitioner, and made the following argument:

> I ask you to think about the Defendant and his modus operandi. What is his modus operandi? Well, it goes back a number of years. It goes back to [J.W.]. At least, he's the first that we know of. They're all about the same age when he met them, weren't they? Ten, eleven, twelve, thirteen years old.

Trial Tr., Vol. IV, p. 143.

Petitioner has not shown that this argument was improper. During trial, several of the abuse victims testified that J.W. was living with Petitioner when they visited and stayed with him, and they testified about their activities in the home. Petitioner also testified that he first met J.W. when J.W. was 10 or 11 years old and that J.W. began living with him when J.W. was 16 years old. In questioning witnesses and Petitioner, the prosecutor elicited testimony showing that Petitioner had a practice of interacting with pre-pubescent and teenage boys. The prosecutor's remarks were based upon the trial testimony. The prosecutor did not claim that Petitioner abused J.W., only that he associated with him when he was young. Petitioner has failed to show that counsel erred or that he was prejudiced by counsel's conduct.

The Court notes that to the extent any of the prosecutor's questions or comments were objectionable, trial counsel may have reasonably decided not to object to such matters in order to avoid drawing further attention to them. The record reveals that trial counsel's strategy was to attack the credibility of the victims and the other prosecution witnesses and to argue that they made false allegations against Petitioner because he had kicked J.W. out of his house and

because certain family members had financial disputes with him. Counsel's strategy was reasonable and the Court will not second-guess counsel on habeas review. The fact that counsel's strategy was ultimately unsuccessful does not mean that counsel was ineffective. *See Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002) ("an ineffective-assistance-of-counsel claim cannot survive so long as the decisions of a defendant's trial counsel were reasonable, even if mistaken").

The record indicates that the trial court instructed the jurors that the prosecutor's questions and arguments are not evidence and that they should only decide the case based upon the evidence admitted at trial. Jurors are presumed to follow the court's instructions. *See United States v. Powell*, 469 U.S. 57, 66 (1984) ("Jurors ... take an oath to follow the law as charged, and they are expected to follow it."). Consequently, Petitioner cannot establish that he was prejudiced by any improper remarks, or that trial counsel was ineffective under the *Strickland* standard.

Petitioner also asserts that trial counsel was ineffective for failing to object to the jury instruction on the other acts evidence, which he believes was the wrong instruction. The trial court instructed the jurors that they could only consider the other acts evidence "for only one limited purpose" to help them determine "the believability of the testimony regarding the acts for which he is now on trial" and could not consider it for other purposes such as showing that Petitioner is a bad person, is likely to commit crimes, or is guilty of other bad conduct. Trial Tr., Vol. IV, p. 181. The trial court appropriately instructed the jurors that they could not use the other acts evidence to establish Petitioner's propensity to commit crimes. Even if the trial court erred, the jury instructions as a whole adequately conveyed the elements of the charged offenses, Petitioner's defense to those charges, and other pertinent matters to the jury.

Petitioner has not shown that the instructions were fundamentally unfair. *See, e.g., Estelle v. McGuire*, 502 U.S. 62, 72 (1991). He has failed to show that counsel erred and/or that he was prejudiced by counsel's conduct.

Petitioner next asserts that trial counsel was ineffective for failing to present a complete defense by exposing the victims' biases and their financial reasons to fabricate their stories. It is well-established that defense counsel has a duty to conduct a reasonable investigation into the facts of a defendant's case, or to make a reasonable determination that such investigation is unnecessary. *See Wiggins v. Smith*, 539 U.S. 510, 522-23 (2003); *Strickland*, 466 U.S. at 691; *Stewart v Wolfenbarger*, 468 F.3d 338, 356 (6th Cir. 2007); *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). "American Bar Association standards...also mandate counsel's duty to investigate all leads relevant to the merits of the case." *Blackburn v. Foltz*, 828 F.2d 1177, 1183 (6th Cir. 1987); *see also Rompilla v. Beard*, 543 U.S. 374, 387 (2005) (noting that the ABA standards provide guidance for determining the reasonableness of counsel's conduct). The duty to investigate "includes the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence." *Towns*, 395 F.3d 251 at 258.

That being said, decisions as to what evidence to present and whether to call certain witnesses are presumed to be a matter of trial strategy, and the failure to call witnesses or present other evidence constitutes ineffective assistance of counsel only when it deprives a defendant of a substantial defense. *See Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002). When making strategic decisions, counsel's conduct must be reasonable. *See Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000); *see also Wiggins*, 539 U.S. at 522-23.

In this case, the record indicates that trial counsel cross-examined the victims and other

prosecution witnesses about their stories and challenged the credibility of their testimony. Counsel argued that the victims and other witnesses made false allegations of sexual abuse because they were upset with Petitioner for kicking J.W. out of the house. Counsel also elicited testimony about Petitioner's business dealings with the children's families and argued that family members blamed Petitioner for their financial problems. While Petitioner indicates that counsel should have offered additional evidence to demonstrate a conspiracy among the parties, he has not supported such a claim. His claims of conspiracy are speculative and conclusory. Conclusory allegations, without evidentiary support, do not provide a basis for habeas relief. *See Cross v. Stovall*, 238 F. App'x 32, 39-40 (6th Cir. 2007); *Prince v. Straub*, 78 F. App'x 440, 442 (6th Cir. 2003); *Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998) (conclusory allegations of ineffective assistance of counsel do not justify federal habeas relief); *see also Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006) (bald assertions and conclusory allegations do not provide sufficient basis to hold an evidentiary hearing in habeas proceedings). Petitioner has not shown that any additional evidence would have affected the outcome at trial. He has failed to establish that trial counsel erred and/or that he was prejudiced by counsel's conduct.

Petitioner asserts that trial counsel was ineffective for failing to challenge the legality of his warrantless arrest at his home. Ordinarily, habeas relief is not available for a perceived Fourth Amendment violation when a habeas petitioner has a full and fair opportunity to litigate the issue in the state courts. *See Stone v. Powell*, 428 U.S. 465 (1976). However, a habeas petitioner may base an ineffective assistance of counsel claim on an assertion that trial counsel failed to properly litigate a Fourth Amendment issue. *See Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). To obtain relief on such a claim, the petitioner must "prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict

would have been different absent the excludable evidence" in order to demonstrate actual prejudice under *Strickland. Id.*; *see also Joshua v. DeWitt*, 341 F.3d 430, 437-38 (6th Cir. 2003).

Petitioner has made no such showing. First, he has not shown that his arrest was illegal such that his Fourth Amendment claim was meritorious. Under Fourth Amendment law, it is well-established that a criminal suspect may not be arrested at his home without a warrant. *See Payton v. New York*, 445 U.S. 573, 586 (1980). It is equally well-established, however, that exigent circumstances provide an exception to that rule when "there is compelling need for official action and no time to secure a warrant. *See Michigan v. Tyler*, 436 U.S. 499, 509 (1978). Exigent circumstances include: "danger of flight or escape, loss or destruction of evidence, risk of harm to the public or the police, mobility of a vehicle, and hot pursuit." *Id*. In this case, a police officer testified that he arrested Petitioner at his home based upon the victims' complaints of abuse but without a warrant because he believed that Petitioner was a flight risk due to his history of travel to Turkey. The record supports a finding that Petitioner's arrest was proper.

Second, even if Petitioner's arrest was illegal, it would not bar his prosecution with lawfully admitted evidence. "An illegal arrest, without more, has never been viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction." *United States v. Crews*, 445 U.S. 463, 474 (1980) (citing *Gerstein v. Pugh*, 420 U.S. 103, 119 (1975)). The exclusionary rule limits what proof the prosecution may offer against a defendant at trial and bars admission of evidence obtained unlawfully. "However, [the petitioner] is not himself a suppressible 'fruit,' and the illegality of his detention cannot deprive the Government of the opportunity to prove his guilt through the introduction of evidence wholly untainted by the police

misconduct." *Crews*, 445 U.S. at 474. Petitioner does not allege that he was detained without a prompt hearing or that the prosecution used custodial statements against him which should have been suppressed. Consequently, he cannot establish that he was prejudiced by trial counsel's failure to challenge the legality of his arrest.

Petitioner instead asserts that items seized from his home, which were admitted against him at trial, were the fruits of his illegal arrest. The record, however, shows that the police had a warrant to search his home. Even if Petitioner's arrest was illegal, the items seized from his home pursuant to the search warrant (as well as the victims' testimony of abuse) were not suppressible fruits of the arrest. Because such a suppression motion would have failed, and given the significant properly-admitted evidence of guilt presented at trial, Petitioner cannot establish that trial counsel erred or that he was prejudice by counsel's conduct. *See, e.g., Martin v. Mitchell*, 280 F.3d 594, 607 (6th Cir. 2002) (denying habeas relief on similar claim). The record indicates that counsel challenged the validity of the search warrant and moved to suppress the evidence seized from Petitioner's home, but the trial court denied that request. *See* Trial Tr., Vol. II, pp. 198-99. Petitioner has failed to establish that trial counsel was ineffective under the *Strickland* standard. Habeas relief is not warranted.

## V. Conclusion

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on his claims and that the petition for a writ of habeas corpus must be denied.

Before Petitioner may appeal this decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court rejects a habeas claim on the merits, the substantial

showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the claims. *Id*. at 336-37. The Court concludes that a certificate of appealability is not warranted in this case because Petitioner has failed to make a substantial showing of the denial of a constitutional right as to his habeas claims.

Accordingly;

**IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and that a certificate of appealability is **DENIED**.


S/DENISE PAGE HOOD
DENISE PAGE HOOD
UNITED STATES DISTRICT JUDGE

Dated:December 22, 2010